JOHN HOBIN, et al. Appellants vs. MARY E. HOBIN, Appellee.
PATRICK HOBIN, et al. Appellants vs. MARY E. HOBIN,
Appellee.

JULY 7, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Evidence. Contracts. Admissions.*
In an action for services rendered intestate upon a promise of payment there-

for, and under expectation of payment, statements on the part of deceased, admitting liability for what had been done for him may be shown.

*(2) Evidence. Contracts. Admissions.*

In an action for services rendered intestate, a will which intestate attempted to execute is admissible, as showing an intent on the part of intestate to reimburse plaintiff.

*(3) Burden of Proof.*

A request to charge that there should be no doubt in the minds of the jury as to a certain fact was properly denied, since the law imposes no such burden upon a plaintiff.

*(4) Actions for Services Rendered.*

In an action for services rendered intestate, a request to charge that "board and services are held to constitute a fair mutual offset" was properly denied, since it would have been in effect to charge that claimant could not recover even if the evidence established an express contract.

*(5) Actions for Services Rendered. Parent and Child.*

The fact that parties stand in the relation of parent and child puts upon one claiming payment for services rendered to the other the burden of proving by a preponderance of the evidence an express contract for wages.

*(6) Actions for Services Rendered. Parent and Child.*

Request to charge that "a grandfather who stands *in loco parentis* to a granddaughter has a right to the earnings of such granddaughter so long as this relation continues whether before or after her majority," was properly denied, since it would deny the right to recover for services under an express contract.

*(7) Actions for Services Rendered. Contracts.*

Where the evidence showed that deceased always promised to pay plaintiff with his real estate; and said he could pay her in no other way, and that he said the same thing on his death bed, and plaintiff performed the services relying on his promises and in expectation of being paid for them, it was not necessary that an express contract made on some particular day out of all the time that the understanding between the parties and the work thereunder continued, should be shown.

*(8) Parent and Child. Emancipation. Contracts.*

Where it appeared that plaintiff's parents lived with her grandfather until she was five years old, that they left then and she remained with her grandparents until they died, when she was over 25 years of age, and that during the last six years her parents lived in a tenement of the same house, the jury were properly instructed that it was not necessary to show an express agreement for emancipation, but that if there were circumstances indicating that the parents had given plaintiff the right to earn her own living, the jury could find that the child had been in fact emancipated and was entitled to the benefit of any contract for her services that she might have made.

*(9)   Contracts.   Suable After Death.*

A request to charge that claimant could not recover against estate of deceased unless she proved a contract necessarily suable before his death, was properly refused, since a contract not suable until after death, is not void, and also because the request was not applicable to the evidence which showed that both parties knew deceased could not pay in the usual way, but only "by the property."

*(10)   Contracts.   Burden Of Proof.*

An express contract for wages may be proved by a preponderance of the evidence and need not be proved beyond a reasonable doubt.

*(11)   Contracts.   Parent and Child.*

The relation of grandfather and grandchild does not cease because of a contract entered into between them, but the presumption arising from the family relationship having been overcome, the suit to recover for services rendered is governed by the ordinary rules of law.

*(12)   Actions for Services.   Proof.*

In an action for services rendered, against estate of deceased, evidence considered and held to sustain verdict for claimant.

ASSUMPSIT.   Heard on exceptions of appellants and overruled.

JOHNSON, J.   These were probate appeals tried together in the Superior Court by agreement.

Mary E. Hobin was granddaughter of Thomas Hobin and administratrix of his estate.   She filed a claim against said estate and under sec. 890, C. P. A., the Municipal Court of the City of Providence on March 24th, 1908, allowed her $2,340 on her claim.   From this decree these appeals were taken.   Exception 4230 is an appeal by four grandchildren and Exception 4231 is an appeal by two sons of Thomas Hobin.

Appellee was her parents' oldest child and when she was born her parents lived (in same tenement) with Thomas Hobin until she was five years old.   Then her father and mother left Thomas Hobin's tenement and appellee lived with her grandfather and grandmother until they successively died.   Thomas Hobin died October 10, 1900.   The grandmother died later.   Appellee took no steps to collect her claim until after her grandmother's death, then was

appointed administratrix of the estate of Thomas Hobin and filed her claim.

The claim is for services rendered and money earned and paid to Thomas Hobin's use during six years next preceding his death. At the age of twelve appellee was taken from school and from that time her work was continuous, doing what was to be done that she could do. At Thomas Hobin's death she was twenty-five years and ten months old, by which she was nineteen years and ten months old at the beginning of the period sued for.

During the six years her work included the cooking, washing and cleaning for the house, anything that was to be done, full charge of the house besides work for outsiders. The work included the labor caused by keeping boarders of whom there were two at Thomas Hobin's death and at other times the number running up to eight, sometimes more, sometimes less. Her work began never later that 5 a. m., and when there was washing to be done at home, at 3, doing that work until 5:30 to 5:45, then getting breakfast, etc., until 7 or 7:30 and finishing the washing by 9, then taking up the usual routine.

She went out also to work for pay, in such cases usually going out about 7 to 8 a. m., and getting home from 4 to 5 p. m.

As to the end of the day she said "That depended on what time my grandmother wanted to go to bed," and this was 8 to 9:30 p. m. Appellee had to get her grandmother ready for bed and never considered her work done until her grandmother was in bed. Her earnings by work for outsiders ran from seventy-five cents to two dollars in a day, depending on the nature of the job. The lowest she so earned in any one week was two dollars and a half and ran up to five dollars, six dollars and often eight dollars in a week, the jobs for outsiders being not less than four a week and often more. All money she earned was turned over to her grandmother and the same was true of Thomas Hobin's

earnings. Both were used to keep the house and pay the debts.

Appellee never was sick to make doctor's bills. Most of appellee's clothes were house clothes. Their average cost she said would not be over $15 a year and often not that. Whenever she did go to an entertainment it was at the expense of her cousin Annie, and not at the expense of Thomas Hobin. All the money she did expend for herself was received from her grandmother.

Thomas Hobin was a teamster, carting ashes, rubbish, anything he could get. For some undefined period before his death he did not work. When asked, "He had boys to do the work for him?" her answer was "He had boys." To the question if they "ran the business" she said "yes," but how or for whose benefit does not appear.

At the close of Mary E. Hobin's testimony, the following admission was made: "MR. CROSS: We admit that the plaintiff's witnesses will testify that Thomas Hobin said, at various times during the six years covered by this claim, that Mary Ellen Hobin had been of great assistance to him, and that she would be paid, would have the property when he died. It is also admitted by Mr. Doran and my side that the property is taxed for $2,660 and that it is worth no more than the amount of Mary Ellen Hobin's bill." And the case was submitted to the jury without any further testimony.

Motions of counsel for the appellants for a nonsuit and also for the direction of a verdict for the appellants were denied and appellants' exception to same was noted.

The jury returned a verdict for the claimant Mary E. Hobin for $2,340.00.

The appellants filed a motion for a new trial on the grounds: 1. That said order and decree is against the evidence and the weight thereof. 2. That said order and decree is against the law." This motion was heard and denied by the trial justice July 2, 1909. The appellants duly filed their bill of exceptions which were duly allowed by said justice.

The case is now before this court on said bill of exceptions.

The appellants' first exception is to question 12, p. 2 of the transcript: "Did you have to go to school?" Counsel for appellants objected. The court said: "I think in a case where they are members of the family, that the original relations between the parties and the course of practice between them is proper as bearing on the question whether she had any legal right to expect remuneration, and whether there was a duty on the other side to pay, or whether it was simply voluntary. I think that is the practice, and it is proper to show what the exact relation was." An exception was noted in behalf of the appellants. Counsel for the appellee then withdrew the question which had not been answered, and put an entirely different question, asking at what age she began to work in the house. To this question no exception was taken.

(1)    The second exception is to the admission of question 76, p. 9 of the transcript: "If anything was said that night by your grandfather about your being repaid, please tell us what it was?" The appellants' exception was noted. The witness had been testifying to the events on the night of her grandfather's death and as to his attempt to make a will. The appellants' counsel objected on the ground that any promise made at that time to pay Mary Hobin for the work she had done, would be a voluntary promise, without consideration. The court said, "I don't know what he expects to prove. His witness testifies that her grandfather always told her that he intended to pay her for work and she always expected to be paid. I don't know what he expects to prove but he certainly would have a right to show admissions on the part of the deceased at any time, admitting liability for what had been done. Of course, if the work had been done without any promise and the promise was subsequently made your point is true, but if they claim he had always promised to pay her and she understood he was to pay her, then any admission that he made would

certainly be admissible." The ruling was correct; for the reasons given by the trial justice.

The third exception was to the admission of the attempted will, page 11 of the transcript: "Mr. DORAN: In corroboration of the evidence as to the fact that Mr. Hobin intended to reimburse her. This is simply to prove what occurred at a certain time in addition to what she testified to occurred at other times. MR. CROSS: It seems to me that the same objection applies to this that I made previously that whatever promise was made at this time was without consideration. THE COURT: I will admit it for what it is worth and note your exception." The ruling was correct for the same reasons as in the case of the second exception.

There is no fourth exception.

The fifth exception is to the denial of the appellants' first request to charge, pp. 42, 45 of the transcript: "When individuals as in this case, stand to each other in a family relation as distinguished from that of master and servant, the law implies no contract for wages but presumes that services are rendered gratuitously; to rebut this presumption there must be an express contract between the parties which creates in effect a new relation of master and servant." This was denied on the ground that it had been substantially charged.

The court had charged the jury, p. 36: "In the first place, you have a child born in the house of her grandparents, growing up and working continuously until the time of the grandparents' death. The law looks upon that relation as the relation of parent and child, that it is the same thing. There is no difference made if they assume relations of one looking out for the other and the other giving services, it is the ordinary case of parent and child and the presumption is that in such a case as that, so long as that relation of parent and child continues, the presumption is that it is the ordinary case of parent and child. You give your children protection, you give them education, you clothe them, give them housing and other benefits; on the other hand, they

give you services. In the ordinary case one is considered the equivalent legally for the other and neither party has a right to demand compensation for work he has rendered to the other, but there is supposed to be the ordinary relations of parent and child, consequently the law in the case, where a person standing in the position of a child to the parent, seeks to recover for services rendered while that relation existed, or appeared to exist, there is a presumption against any recovery. That is *prima facie*, on the first impression; in other words, the presumption is that there is no contract to compensate." And on page 40, the court charged: "You must not only find that services were rendered,—and there is no question here but what they were rendered and certainly of a most strenuous character, but that is not enough. You must not only find that they were rendered and accepted, but you must find that at the time and during the period that this woman claims for her services that there was an understanding and agreement between Thomas Hobin, the deceased, to pay for those services, that he meant to pay for them, and there was an understanding and agreement on the part of Mary Hobin that he was to pay her for them, that is an express agreement. Now, as was stated to you in argument, that need not be in writing, or in any formal set words, but there must be evidence and strong evidence to satisfy you by a preponderance of the evidence that there was a distinct understanding between Thomas Hobin on one part that Mary Hobin should be paid for her services, and on the part of Mary Hobin not only expectation that she should be paid but more, that the understanding, coming from Thomas Hobin that she should be paid; that is, there must be an express understanding, between them. It does not need any formal words or writing or anything of that kind, but there must be a distinct understanding differing from any vague statement as, 'I will pay you and so forth,' 'I will pay you good by and by.' There must be a distinct understanding, that there was a distinct promise on the part of Thomas Hobin to pay for services and a distinct agree-

ment and understanding on the part of Mary Hobin that she should be paid for them and services rendered in expectation of such." The request was sufficiently covered by these instructions, and also by other portions of the charge.

(3)    The sixth exception was to the denial of appellants' second request to charge, pages 42, 45 of the transcript: "In order to find for the plaintiff, there should be no doubt in your minds that the services were rendered by Mary Ellen Hobin in expectation of wages and received by Thomas Hobin in an expectation on his part of paying therefor." This request was denied on the ground that the burden of proof is improperly stated in such request. The request was properly denied. To have charged as requested would have imposed a burden upon the claimant far greater than that imposed upon the state in a criminal case. The state only has to show that the defendant is guilty beyond a reasonable doubt. It does not have the burden of removing all doubt.

The seventh exception is to the denial of the appellants' third request to charge, pp. 43, 45, 46 of the transcript: "A mere expectation on the part of Mary Ellen Hobin that she was to be remunerated from the bounty of Thomas Hobin either by will or by gift in his lifetime would not warrant a finding in her favor but her evidence must satisfy you by a preponderance of the evidence that it was the expectation and understanding of both Mary Ellen Hobin and Thomas Hobin that her services created a debt due from him to her." This was denied on the ground that it had been covered. This had been covered by the portions of the charge quoted in considering the fifth exception and by other portions of the charge.

The eighth exception is to the denial of the appellants' fourth request to charge, pp. 43, 46 of the transcript: "If Mary Ellen Hobin after arriving at the age of twenty-one years continued to live, labor and render services in Thomas Hobin's family with his consent but without any express contract as to her compensation, the presumption of law is

that no payment for such services was contemplated by either party." This was denied on the ground that it had been covered. This was sufficiently covered in the charge, particularly in the portion quoted in the consideration of the fifth exception.

The ninth exception is to the denial of appellants' fifth request to charge, as shown on pages 43, 46 of the transcript: "In cases of this kind, board and services are held to (4) constitute a fair, mutual offset." . The request was properly denied. To have granted it would have been in effect to charge that the claimant could not recover even if the evidence established an express contract.

(5) The tenth exception is to the denial of appellants' sixth request to charge, as shown on pages 43, 46 of the transcript: "The fact that Thomas Hobin stood to Mary Ellen Hobin in the relation known as *loco parentis* puts upon her the burden of proving an express contract for wages and if she fails to clearly prove such a contract, she cannot recover." This request was granted and charged, but the court added, "The burden of proof is, by a preponderance of the evidence, as I have stated to you." The addition was proper.

(6) The eleventh exception is to the denial of appellants' eighth request to charge, as shown on pages 43, 46, 47 of the transcript: "A grandfather who stands in *loco parentis* to a granddaughter had a right to the earnings of such granddaughter so long as this relation continues whether before or after her majority." This request was properly denied. The court had fully stated the presumption against the right to recover in cases where the relation of parent and child exists, and that it would be the same in the case where a child lived with a grandfather as a member of his family, and had charged the necessity of an express contract in such a case in order for the child to recover for services. This request would if granted have denied the right to recover even if an express contract were shown.

The twelfth exception is to the denial of the appellants' ninth request to charge, as shown on pages 43, 47 of the

transcript: "If you find the plaintiff entitled to recover, such recovery must be limited to the time during which you find there was an express contract between her and Thomas Hobin for the payment of wages." This was denied as already covered. This request was properly denied. It had been covered entirely by the charge.

(7)   The thirteenth exception is to the denial of appellants' tenth request to charge, as shown on pages 43, 47 of the transcript: "In order to entitle the plaintiff to recover, you must find that at some definite date Thomas Hobin by an express contract promised Mary Ellen Hobin to pay her for work, labor and services thereafter to be performed by her for him and that Mary Ellen Hobin, relying on that promise and in the expectation of pay did perform and render work, labor and services for her grandfather." This was denied as already covered. This request was properly denied. The testimony showed that Thomas Hobin always promised to pay the appellee; promised that he would pay her with the property and said that he could pay her in no other way; that he said "Only for her I don't know what I would do. We never could keep this place only for her, but I certainly will pay her," and that he said the same thing on his death-bed; and that the appellee performed the services relying upon his said promises and in the expectation of being paid for the same. Such being the evidence, the jury could not properly be instructed to find a definite date on which an express contract was made. It was not necessary that an express contract, made on some particular day, out of all the years that the understanding between the parties and the work thereunder continued, should be shown.

Exception thirteen and one-half is to the refusal of said trial justice to grant the appellants' motion for a nonsuit and direction of a verdict. This exception will be considered in connection with that to the denial of the motion for a new trial.

The fourteenth exception is to the denial of appellants'

eleventh request to charge, as shown on pages 43, 47 of the transcript: "In the event you find the plaintiff entitled to recover, the amount of her recovery must be limited to what you find her services to have been reasonably worth deducting therefrom the cost of her clothing and other expenditures in her behalf." This was denied as already covered. At page 41, the court said: "You are to take into consideration what she has received in return, her board, her lodging, her clothing, whatever it is. She says her clothing didn't cost very much. I think she said $15 a year. That is certainly a remarkably small bill for a woman. However, all these articles should be taken into consideration in figuring out what the net value of her services were. That is something she has received and the estate is entitled to have that figured in in connection with the question as to how much per week she would be entitled to receive." The court was not obliged to repeat the instruction.

(8) The fifteenth exception is to the denial of appellants' twelfth request to charge, as shown on pp. 45, 47, 48 of the transcript: "No recovery in this action can be had by Mary Ellen Hobin for services rendered Thomas Hobin when she was under the age of twenty-one because there being no evidence of her emancipation; the right, if any, to sue for such services belongs to her father." The court had charged, p. 37: "In this case, coming down to the particular points here, this woman at the time she begins the claim for her services, was nineteen years old. Her parents were alive but, as appears from her testimony, if I remember correctly, that for several years prior to the time she reached nineteen, that her parents hadn't been living in the same house and that she had, so far as appeared, had no particular dealings with them. What the facts are I don't know. I am simply stating the testimony such as you heard it. Now, it is not necessary in order to find, as I have said,—and let me go back a few seconds,—*prima facie* her father being living would be entitled to her wages to twenty-one even if she had a valid contract with Thomas

Hobin, but it is not necessary to show that she was emancipated from the control of her father to show an express agreement in writing; for instance, if there are circumstances which indicate that the parent has given to the child a right to go out and earn his own living, has released his own claim, in other words, of the child, and has simply said, 'You can look out for yourself,' as we frequently see in the world, and if there are circumstances of that kind, the jury would have a perfect right, provided the evidence was sufficient to satisfy them, to come to the conclusion that the parent had emancipated the child, or that he had said to the child, 'You look out for yourself,' and then the child would have a perfect right to contract, a perfect right to receive any benefit for the child's own self which it had earned. That is what is claimed in the case of Mary Hobin in regard to her parents, that her parents had emancipated her and consequently she was entitled, from nineteen to twenty-one, to receive what she earned provided she can prove that she had a valid agreement." The evidence was that Mary Ellen Hobin was her parent's oldest child and when she was born her parents lived in the same tenement with Thomas Hobin until she was five years old. Then her father and mother left Thomas Hobin's house and she lived with her grandfather and grandmother from that time until they died. During the six years before Thomas Hobin's death her parents lived in the same house in the upper tenement, Thomas Hobin living in the lower. The instructions of the court on the question of her emancipation by her parents under the circumstances shown by the evidence were proper. The request was properly denied.

(9)    The sixteenth exception is to the denial of appellants' thirteenth request to charge as shown on pages 43, 44, 48 of this transcript: "In order to entitle Mary Ellen Hobin to recover in this action you must find as a fact that the relation of debtor and creditor existed between her and Thomas Hobin from the moment she began to work for him for wages and that she could at any time thereafter properly

have demanded her wages then due, and on his failure to pay such wages could successfully have sued him therefor." This request appears to mean that the court ought to have charged that appellee could not recover unless she proved a contract necessarily suable before Thomas Hobin's death, or, put another way, that a contract not suable until after his death would be void. This is not so. A broken promise to pay by legacy is actionable. The request is not applicable to the evidence which is that deceased promised payment and claimant worked in expectation of payment. There was no contract by one to pay after death and by the other to wait for pay till that time. The situation, according to the evidence, was that both parties knew he was unable to pay as employers usually pay and, as he said he could pay only "by the property." The request was rightly refused.

The seventeenth exception is to the denial of appellants' fourteenth request to charge, as shown on pp. 44, 48 of the transcript: "In order to entitle the plaintiff to recover you must find as a fact that the relation between Thomas Hobin and Mary Ellen Hobin had ceased to be that of grandparent and grandchild and become that of master and servant, and that both so understood." The relation of grandparent and grandchild would not cease after an agreement between them that she should perform services for him and should be paid for such services. The court had fully charged the jury as to the presumption in such cases and the necessity of proof by the grandchild to overcome such presumption, in the portion of the charge quoted *supra*, in considering the fifth exception. The request was rightly refused.

(10)     The eighteenth exception is "To that part of the instructions of said Justice to the jury to the effect that the express contract for wages could be proved by a preponderance of the evidence, and not beyond a reasonable doubt, as shown on pages 40, 41, 43 and 44 of said transcript." This instruction was correct.

The nineteenth exception is "To that part of the instruc-

tions of said Justice to the jury to the effect that it is not necessary that appellee's claim should be one which would have been enforceable at any time because the promise might have been made in such a way as not to be enforceable until after the death of appellee's grandfather and grandmother, and that the relation of debtor and creditor need not necessarily have obtained between appellee and the intestate, as shown on pages 42, 44 and 45 of said transcript.'' No such instructions appear on page 42. On pages 43 and 44, the court speaking of the thirteenth request, said: ''The thirteenth request is denied because it seems to the court. that it does not properly apply to the evidence as put in here. The substance of the request is that in order to find a verdict for the plaintiff that you must find that she had a legal claim against Thomas Hobin, one on which she could recover. But the evidence, the testimony, what she claims is that her claim was to mature only after his death. That is her testimony, but she must have had a legal claim, one which was enforcible at one time, at the time of his death, as soon as she begins to claim wages. There is no question about that. There must have been a claim which was valid on her part and one enforcible in law but it is not necessary, however, that she could sue the day the services were rendered because the evidence on her part is to the effect that it was not to be enforcible until after the death of the grandfather and grandmother, whatever it was. The basis of the whole claim is that there was a valid legal obligation. That is true to that extent otherwise the request is denied and exception noted.'' The instruction was proper.

(11)    The twentieth exception is to the denial of appellants' first request for special findings, as shown on page 48 of the transcript: ''Did the relation between Thomas Hobin and Mary Ellen Hobin of grandfather and grandchild ever change to that of master and servant, if so when?'' As we have said before, the relation of grandfather and grandchild does not cease because the grandfather gets the grandchild to do the

work for him and promises to pay the grandchild for doing the work. The presumption from the family relations and from membership in the household is that services rendered are not rendered in the expectation either of the grandchild that he shall be paid for them or of the grandfather that he shall pay for them. This may be overcome, however, by proof that the services were rendered by the child or grandchild in the expectation of payment upon the agreement and promise of the grandfather that the services rendered were to be paid for by him. The presumption being overcome by proof, the law with that sanity which is its usual characteristic, recognizes that, the obstacle to a recovery which is peculiar to a suit by one holding the family relation being removed, the suit is then governed by the ordinary rules of law. The special finding would only have tendered to confuse the jury and could serve no useful purpose. It was rightly refused.

The twenty-first exception is to the denial of appellants' second request for special findings, as shown on pages 48 and 49 of transcript: "Did Thomas Hobin always intend to leave Mary Ellen Hobin by his will a portion of his property as a full return for everything she has contributed toward himself and his family, and did she so understand?" There was no evidence in the case to which this could apply.

The twenty-second exception is to the denial of appellants' third request for special findings, as shown on page 48 of transcript: "Did Mary Ellen Hobin and Thomas Hobin enter into an express contract of employment and if so, when?" . The court had instructed the jury as to the necessity that an express contract should be shown and had instructed them as to what would constitute an express contract. In this request, however, the appellants ask that the jury shall be required to find not only whether Thomas Hobin and Mary Ellen Hobin entered into an express contract but "if so when." The appellants are still seeking the exact date, when the evidence shows that no exact date can be found. The evidence was that the promises of

Thomas Hobin were continued and habitual, that Mary Ellen should be paid, in the only way he could pay her, by the property. Mary Ellen understood this and rendered the services in reliance upon his promises and in the expectation of payment. In these circumstances, on the evidence inquiry as to the exact date of an agreement made, as indicated, by this long series of promises and this continued labor in reliance upon them, would be futile, and its only effect would be to confuse the jury by confronting them with a question that upon the evidence need not be answered, and further could not be answered.

The twenty-third exception is to the denial of appellants' fourth request for special findings, as shown on page 49 of the transcript: "Was Mary Ellen Hobin's expectation of pay founded on Thomas Hobin's promise to devise a portion of his real estate to her by will?" What we have said as to the denial of the second request for special findings, which is the subject of the twenty-first exception applies as well to this.

(12) The twenty-fourth exception is to the decision of said court denying the appellants' motion for a new trial on the grounds mentioned therein. The situation shown by the evidence is that Thomas Hobin and his wife, in 1894, were old people in humble circumstances, who had raised a family; that from the time appellee was twelve years of age she did work she was able to do and from the time when she was nineteen, for six years did work excessive in amount, which could be performed only by a woman both willing to work and strong in constitution. Besides the care of the old people her work was profit-earning. The amount earned by washing and cleaning is somewhat defined. The profit from boarders is not stated. These earnings were outside of usual household services. From the time Thomas Hobin stopped work claimant was the only earner in the family. The evidence was that Thomas Hobin always intended to pay appellee with the property and could not pay any other way and made a habit of saying he intended to

pay appellee, and said the same thing on his death-bed, and that appellee expected to be paid and not to work for nothing. She never asked him for wages. He never agreed to a definite sum, only by the property. Thomas Hobin said, "Only for her I don't know what we would do. We never could keep this place only for her, but I certainly will pay her." She did not expect pay while he was alive or while her grandmother was living. When they were through she said: I thought it sure was mine." "I thought my uncles understood it, and I know that they did understand it, that I was to have it for what I done." "He always promised me pay by the property. He could not pay me any other way because he had no means to pay me." "He always told me he intended to pay me for my work with the property, that he could not pay me in no other way." What he said about pay he said voluntarily. He never paid her any wages.

The appellee also introduced Thomas Hobin's attempted will by which he undertook to devise all his estate to his wife for life and after death the house where he lived to go to appellee and the house in the rear on the same lot to go to Annie Hobin. This paper was as follows: "Thomas Hobin, + will all my estates go to my wife while she lives and then this house go to Mary Ellen as it stands and the one in the rear go to Annie Hobin, Thomas Hobin X."

Appellants contend very earnestly that appellee must prove an "express contract." That is true in the sense that she must prove a promise to pay, but not true in the sense evidently insisted upon that she must prove a promise to pay certain sums at certain times for certain services. The only obstacle peculiar to such a case is, that the law does not imply a promise by a parent to pay for his child's work. The child must prove a promise to pay.

"Thus where an adult child resides with and performs valuable service for the parent an understanding may be shown between them of recompense either in money or by way of testamentary provision under the parent's will.

In meritorious instances, and particularly when the parent was long sick and infirm, and the child or some particular child performed indispensable functions, or where by personal labor or skill the child enhanced the value of the parental estate, a mutual intention to this effect may be inferred from the circumstances and where from some consistent cause no such testamentary provision has been made compensation will be allowed, out of the deceased parent's estate upon the usual footing of a creditor's claim." Schouler Dom. Rel. sec. 274, p. 442.

"When the relation of parent and child exists the law will not readily assume that of debtor and creditor likewise; and board and services may constitute a fair, mutual offset in the general household. But this presumption may be overthrown, and the reverse established, by proof of an express or implied contract to that effect; an implied contract being proven by facts and circumstances which show that both parties, at the time when the services were performed, contemplated or intended pecuniary recompense." Schouler, sec. 269, p. 432.

In *Fuller* v. *Mowry*, 18 R. I. 424, the court says (p. 426): "The defendant argues that though the law implies a promise to pay for services rendered and voluntarily accepted, yet when the services are rendered by members of a family living together in one household to each other, no such implication arises; for the reason that where the household family relation exists, reciprocal acts of kindness which tend to promote the comfort and convenience of the members of the household are presumed to have been rendered disinterestedly, from mere affection or good will; and, hence, that a plaintiff who sues for such services, to recover, must show affirmatively an express promise of remuneration. Doubtless this argument is sound, so far as it goes, but the principle contended for is subject to the further qualification that if the circumstances in which the services are rendered are such as to show a reasonable and proper expectation that compensation is to be made, the plaintiff will be entitled to recover."

In *Newell* v. *Lawton*, 20 R. I. 307, 308, the court in sustaining a nonsuit, say "The evidence shows no express agreement on the part of testatrix to pay for these benefits nor circumstances affording ground for a reasonable expectation on the part of plaintiff that compensation was to be made."

In *Brown* v. *Cummings*, 27 R. I. 369, the plaintiff had not lived with deceased before the services, but the court say, p. 370, "If she was a member of his family at that time, then the circumstances in which the services were rendered should have been submitted to the consideration of the jury for their determination as to whether they do or not show a reasonable and proper expectation that compensation was to be made."

The appellants' motions for a nonsuit and for the direction of a verdict for the appellants, were properly denied. The evidence supports the verdict. Appellants' motion for a new trial was denied by the justice who presided at the trial. His decision was correct. All of the exceptions of the appellants are overruled, and the case is remitted to the Superior Court for entry of decree upon the verdict.

*Frank L. Hanley, Edward M. Sullivan, Harry P. Cross*, for appellants.

*Doran & Flanagan*, for appellee.